582 A.2d 1162

**THOMPSON & PHILLIPS CLAY COMPANY, Petitioner**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 1, 1990.

Decided Nov. 28, 1990.

Anthony P. Picadio, Sherman & Picadio, Pittsburgh, for petitioner.

Michael J. Heilman, Asst. Counsel, with him, Martin H. Sokolow, Jr., Harrisburg, for respondent.

John M. Elliott, with him, Stephen C. Braverman and Stephen G. Allen, Elliott, Mannino & Flaherty, P.C., Philadelphia, and Henry McC. Ingram and Stanley R. Geary, Buchanan Ingersoll Professional Corp., Pittsburgh, for amicus curiae, Pennsylvania Coal Ass'n.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Thompson & Phillips Clay Co. (T & P) petitions for our review of a February 9, 1990 order of the Environmental Hearing Board (the Board) entering summary judgement in favor of the Department of Environmental Resources (the Department). T & P, a mine operator, was refused a bond release because of drainage seeping from its mine. T & P also seeks review of an earlier interlocutory order dated March 15, 1989, in which the Board granted the Department's motion to limit issues to one concerning the further risk of discharge of pollutants and held that T & P was precluded from contesting its liability for the discharge.

T & P operated a 177 acre surface clay mine under a permit issued by the Department. The mine site was downhill and west of an inactive surface mine previously mined by another person. The mine permit issued to T & P included numerous conditions which regulated, *inter alia,* discharges of water from the mine site and specified treatment for the discharges. In June of 1983, T & P applied to the Department for a second stage release of the reclamation bond posted for its mine site. In early May of 1986, T & P's request was denied because the mine was found by the Department to be discharging acid mine drainage.[1] In late May of 1986, T & P appealed the denial of the bond release to the Board. The Board found T & P liable for the discharge of pollutants from the site and affirmed the denial of the bond release.

1. Acid mine drainage is polluted water typically caused by coal and clay mining; it is characterized by acidity in excess of alkalinity, low pH, high concentrations of metals, such as iron and manganese, and sulfates. Such discharges are unlawful under the Pennsylvania Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. § 691.1, *et seq.*

■ Initially we note that pursuant to Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, we must affirm the Board's determination unless the necessary findings are unsupported by substantial evidence, an error of law has been committed, or constitutional rights have been violated. *Lucas v. Department of Environmental Resources*, 53 Pa.Commonwealth Ct. 598, 420 A.2d 1 (1980).

■ T & P argues that it did not cause the pollution; it maintains that the drainage is flowing, through the forces of gravity, from the abandoned mine uphill from its mine and, therefore, it is not responsible for treating the drainage. T & P further argues that before liability will attach under Section 315(a) of The Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended,* (the Law), 35 P.S. § 691.315(a) an element of causation must be proven. Section 315(a) of the Law states in relevant part:

§ 691.315. **Operation of Mines**

(a) No person or municipality shall operate a mine or allow a discharge from a mine into the waters of the Commonwealth unless such operation or discharge is authorized by the rules and regulations of the department or such person or municipality has first obtained a permit from the department. Operation of a mine shall include preparatory work in connection with the opening or reopening of a mine, refuse disposal, backfilling, sealing, and other closing procedures, and any other work done on land or water in connection with the mine. A discharge from a mine shall include a discharge which occurs after mining operations have ceased, ... The operation of any mine or the allowing of any discharge without a permit or contrary to the terms or conditions of a permit or contrary to the rules and regulations of the department, is hereby declared to be a nuisance.

The primary issue for our consideration is whether Section 315(a) of the Law requires proof of a causal link between an operator's actions and acid mine drainage before liability will attach.

In support of its contention that causation must be demonstrated before liability will attach, T & P maintains that the language of the statute itself dictates the result calling for a causal link. T & P grasps onto the words "allow" and "from" in the statute and after citing several definitions of each word, urges us to conclude that "allow" means an act involving positive or affirmative conduct and "from" means source or beginning. Given these definitions, T & P argues, the statute by its very terms requires the causal link. We reject this argument.

The first line of Section 315(a) of the Law plainly states, "No person ... shall operate a mine or allow a discharge from a mine into the waters of the Commonwealth unless such operation or discharge is authorized...." The clear language of the statute does not set forth a causal requirement, and "allow" does not mean "cause." Furthermore, T & P's argument that ambiguity surrounds the phrase "discharge from" also fails. In reversing the Commonwealth Court in *Commonwealth v. Harmar Coal Company*, 452 Pa. 77, 94–95, 306 A.2d 308, 318 (1973), Chief Justice Benjamin R. Jones opined:

With regard to the purported lack of relationship between the evil sought to be cured and the appellees' conduct, the Commonwealth Court failed to recognize the obvious nexus between the discharging of the acid mine drainage into the surface waters and the clear legislative intent to not only prevent further pollution but also to restore and reclaim those waters presently polluted. As the dissenters below correctly observed, 'it is the discharge of the polluted waters into the stream that is critical and not the source of the polluted waters.' [*Pittsburgh Coal Co. v. Sanitary Water*] 4 Pa.Commonwealth Ct. [407] at 426, 286 A.2d [459] at 469 [1972]. It is even clearer in the language of Section 315(a) of the 1970 Amendments that the Legislature was not concerned with the source of the polluted water for that section provides, in part, that '[n]o person or municipality shall operate a mine or allow a discharge from a mine....'

Thus the Supreme Court has squarely faced the issue of whether the source of the polluted water is critical to finding liability under Section 315(a) of the Law and has concluded that the source or origin is irrelevant; the decisive factor is the discharge. In the case before us, it is undisputed that acid mine drainage seeps from T & P's mine site. The fact that T & P's mine is not the origin of the pollution is irrelevant; T & P's mine site is the point from which the acid mine drainage is discharged into the waters of the Commonwealth, an act which is prohibited by statute.

T & P argues that in all the cases which precede it and which deal with the question of whether an operator must treat acid mine drainage emanating from its mine site, the operator in fact either caused the drainage or affected it in some manner. See *Commonwealth v. Barnes & Tucker Co.*, 455 Pa. 392, 319 A.2d 871 (1974) (*Barnes & Tucker I*); *Commonwealth v. Barnes & Tucker Co.*, 472 Pa. 115, 371 A.2d 461 (1977) (*Barnes & Tucker II*); *Harmar Coal.* Although each of the above-cited cases in fact involved some element of causation, neither the Law through its clear language nor the courts have held that a causal link is a prerequisite for the imposition of liability.

T & P and amicus curiae, The Pennsylvania Coal Association, both support the contention that a demonstration of cause is necessary to impose liability and argue that liability without cause amounts to a deviation from established legal principles. T & P and the Pennsylvania Coal Association premise this argument on tort principles relating to strict liability. Their point is that all torts, including those which fall into the strict liability category, require cause, the relationship between the actor's conduct and the harm, to be shown. Although correct in asserting cause is necessary for torts, we must stress that the particular case before us is not founded in tort. The Law was enacted under the Commonwealth's authority to protect the health, safety and welfare of its citizens, which authority is more commonly

known as police power. This power of the Commonwealth is

> fundamental because it enables 'civil society' to respond in an appropriate and effective fashion to changing political, economic, and social circumstances, and thus to maintain its vitality and order.... 'The police power of the state [must therefore be] ... as comprehensive as the demands of society require under the circumstances.'

*National Wood Preservers, Inc. v. Department of Environmental Resources*, 489 Pa. 221, 232, 414 A.2d 37, 42 (1980) (citation omitted) (quoting *Barnes & Tucker II* at 126, 371 A.2d at 467). The history of the amendments to the Law is clear with respect to the overriding public interest in controlling acid mine drainage, a major cause of stream pollution in Pennsylvania. The objective of the Law is not only to prevent further water pollution but also to reclaim and restore to a clean condition every body of water currently polluted. *See generally, Harmar Coal.* In accordance with these goals, the only logical way to eliminate pollution and reclaim the Commonwealth's waters is to eliminate or treat all the polluting discharges. *Id.,* 452 Pa. at 94, 306 A.2d at 317.

We therefore conclude, based upon the foregoing discussion, that T & P is liable for the acid mine drainage seeping from its mine site even if there is no causal link between T & P's mining activities and the pollution.

The order of the Board dated February 9, 1990, entering summary judgement in favor of the department is affirmed.[2]

## ORDER

NOW, November 28, 1990, the order of the Environmental Hearing Board, in the above-captioned matter, dated

2. We need not consider the validity of the interlocutory order of March 15, 1989, as we have concluded cause to be irrelevant.

February 9, 1990, at E.H.B. Docket No. 86–275–W, is affirmed.

SMITH, J., concurs in the result only.