595 A.2d 733

Clark R. INGRAM, George M. Ingram, Gary C. Ingram and Gregory B. Ingram, Petitioners,

v.

DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.

INGRAM COAL COMPANY, Henry L. Israel and Betty Ann Taylor, personal representatives of the Estate of Herman J. Israel, and Rockwood Energy Management Co., Petitioners,

v.

DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 29, 1991.

Decided July 19, 1991.

Reargument Denied Sept. 6, 1991.

Roger H. Taft, Erie, for petitioners Clark R., George M., Gary C. and Gregory B. Ingram.

Robert P. Ging, Jr., Confluence, for petitioners, Estate of Herman J. Israel.

Kurt J. Weist, Lewisburg, for respondent.

Vincent J. Barbera, Somerset, for intervenor, Rockwood Energy and Mineral Corp.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

These two petitions for review arise from an order of the Environmental Hearing Board (EHB) dated April 17, 1990, as amended on April 27, 1990. At issue before EHB, and before this Court, is a compliance order issued by the Department of Environmental Resources (DER) relating to abatement of discharges entering a stream from a surface mining site. Before addressing the issues raised in each petition, we shall set forth the factual background necessary for our discussion.

The surface mining site in question is a 42 acre area located near the community of Frenchville in Girard Township, Clearfield County. The site encompasses a stream which is an unnamed tributary of Deer Creek. Mining and mine drainage permits for the site were issued by DER in 1976 to an entity known as Ingram Coal Company.

On June 29, 1988, DER issued a compliance order (at Docket No. 88H057) citing Ingram Coal Company for acid mine discharges flowing into the unnamed stream from the surface mining site.[1] The compliance order directed Ingram Coal Company, as operator of the site, (1) to immediately provide adequate treatment to insure that all discharges from the site met the effluent limitations set forth at 25 Pa.Code § 87.102, and (2) to submit to DER, for its approval, a plan and schedule for providing acceptable treatment or abatement of the discharge so as to achieve compliance with 25 Pa.Code § 87.102. The compliance order also set a "required abatement date" of August 2, 1988 for undertaking these corrective actions.

Ingram Coal Company is presently owned and operated by Rockwood Energy and Minerals Corporation (Rockwood), which filed a notice of appeal with EHB from this DER compliance order. Stating the basis for its appeal, Rockwood, d/b/a Ingram Coal Company, averred that it was not the proper party to be made subject to the compliance order

---

1. The compliance order indicated that these discharges were in violation of DER regulations set forth at 25 Pa.Code § 87.102(a)(1), (2) and (5).

because it was not the holder of the mine drainage permit (No. 4576SM4) referred to in the order. It was averred that Ingram Coal Company was originally owned by a partnership comprised of Clark R. Ingram and his sons George, Gary and Gregory, and that DER Permit No. 4576SM4 was issued to this Ingram Partnership. It was further averred that, in 1982, Herman J. Israel purchased the license to use the name "Ingram Coal Company" from the Ingram Partnership, and that Rockwood, in turn, later purchased the license to use this name from Herman J. Israel. However, neither purchase included the DER mine drainage permit issued to the Ingram Partnership. Rockwood/Ingram Coal Company also requested that EHB issue a supersedeas, staying the requirements of the compliance order.

On August 30, 1988, DER issued an order amending its compliance order at Docket No. 88H057 to, *inter alia,* identify as operators Clark, George, Gary and Gregory Ingram, and Herman J. Israel. This amended order also changed the required abatement date to October 5, 1988. The amended compliance order was then issued to all parties identified as operators. Appeals from this amended order were filed with EHB by Rockwood, the Ingrams and Herman J. Israel, all of which were consolidated for proceedings before EHB. All of these parties also filed petitions for supersedeas of the amended compliance order.

EHB member William A. Roth presided over a supersedeas hearing in this matter on January 25, 26, 27, 30 and 31, 1989. EHB granted supersedeas to Rockwood, but denied supersedeas to the Ingrams and Israel. Subsequently, DER filed with EHB a motion for summary judgment against the Ingrams and Israel. The Ingrams and Rockwood also filed separate motions for summary judgment against DER.[2]

To complicate matters further, on September 28, 1989, Herman J. Israel died. Shortly afterwards, a motion to

2. The authority of EHB to enter summary judgment was recently affirmed by this Court in *Snyder v. Department of Environmental Resources,* 138 Pa.Commonwealth Ct. 534, 588 A.2d 1001 (1991).

dismiss DER's action against Herman J. Israel was filed with EHB by Israel's attorney, alleging that, as a result of Israel's death, the amended compliance order was no longer valid as it related to Israel. DER and the Ingrams filed separate objections to this motion to dismiss, and requested, instead, that EHB act to substitute as parties in this matter the personal representatives of Herman J. Israel's estate, who are Henry L. Israel and Betty Ann Taylor.

On April 17, 1990, EHB issued the order which is the subject of these petitions for review. In its order, EHB: (1) denied the motion to dismiss DER's action against Herman J. Israel, and granted the request to substitute the personal representatives of Herman J. Israel as parties in this matter;[3] (2) granted DER's motion for summary judgment against the Ingrams and the personal representatives of Herman J. Israel; (3) denied the motions for summary judgment filed by the Ingrams and Rockwood; and (4) dismissed the administrative appeals filed on behalf of the Ingrams and Herman J. Israel. Petitions for review of that order filed by the Ingrams and the Estate of Herman J. Israel were consolidated for oral argument, and are presently before this Court for disposition.[4]

Before proceeding further, we note that DER claims as legal authority for issuance of its compliance order to all of the parties involved in this action the language of Section 315(a) of the Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. § 691.315(a), commonly referred to as the Clean Streams Law. The pertinent language of this statutory provision reads as follows:

> No person or municipality shall operate a mine or allow a discharge from a mine into the waters of the Common-

---

**3.** On April 27, 1990, EHB issued a second order amending and correcting its order of April 17, 1990, because it incorrectly identified one of the personal representatives as "Herman" L. Israel, rather than as Henry L. Israel. In all other respects, the order of April 17, 1990 was unchanged.

**4.** A stay of EHB's order pending disposition of this matter was granted to the Ingrams and the Estate of Israel by order of this Court dated July 5, 1990.

wealth unless such operation or discharge is authorized by the rules and regulations of the department [DER] or such person or municipality has first obtained a permit from the department. Operation of the mine shall include preparatory work in connection with the opening or re-opening of a mine, refuse disposal, backfilling, sealing, and other closing procedures, and any other work done on land or water in connection with the mine. A discharge from a mine shall include a discharge which occurs after mining operations have ceased, provided that the mining operations were conducted subsequent to January 1, 1966, under circumstances requiring a permit ... under the provisions of section 315(b) of this act ... The operation of any mine or the allowing of any discharge without a permit or contrary to the terms or conditions of a permit or contrary to the rules and regulations of the department, is hereby declared to be a nuisance....[5]

35 P.S. § 691.315(a).

Having set forth this factual background, we now turn to the issues raised in these petitions for review.

## I.

The first petition for review which we shall address is that brought by the Ingrams, which raises two issues for our consideration.

Initially, the Ingrams contend that DER should be estopped from seeking to enforce its compliance order against them based on the equitable doctrines of detrimental reliance and laches. The Ingrams note that they operated and owned the mine site only for the time period from 1976 to 1982, while DER did not issue its compliance order until 1988. The Ingrams also point out that DER knew that the water quality of the unnamed tributary of Deer Creek, which this action concerns, failed to meet DER water quali-

5. The language of Section 315(a) just quoted was enacted in a 1980 amendment to the Clean Streams Law. However, this language is virtually identical to the previous language of Section 315(a) enacted in 1970.

ty standards throughout that 12 year time period (1976–1988). Yet, DER issued no compliance order to the Ingrams until well after they had ceased surface mining operations and sold the site.

The Pennsylvania Supreme Court considered similar estoppel and laches defenses raised by a coal mine operator charged with a violation of the Clean Streams Law in *Commonwealth v. Barnes & Tucker Company*, 455 Pa. 392, 319 A.2d 871 (1974). The Supreme Court dismissed the operator's attempts to raise such defenses, noting that the Clean Streams Law, itself, at Section 701, proclaims that the purpose of the statute is "to provide additional and cumulative remedies to abate the pollution of the waters of this Commonwealth," and that this section goes on to state, "nor shall any provision in this act, or the granting of any permit under this act, or any act done by virtue of this act, be construed as estopping the Commonwealth ... from proceeding ... to abate any pollution now or hereafter existing...." *See* 35 P.S. § 691.701. Taking into account this provision and previous case law, the Supreme Court enunciated a broad principle in *Barnes & Tucker* that "stream polluters can acquire no prescriptive or property right to pollute as against the Commonwealth no matter how long their conduct has been tolerated." *Id.*, 455 Pa. at 415, 319 A.2d at 884.

■ Following this instructive reasoning, we find no merit in the Ingrams' assertions that DER should be estopped from requiring that they now take action to abate the continuing pollution of the Deer Creek tributary. The Ingrams acknowledge that periodic water quality sampling at the mine site since 1976 confirmed that the water quality did not meet DER standards. Basically, the Ingrams take the position that, since DER knew of this violation of its water quality standards and failed to take immediate action to abate the pollution causing it, DER should be estopped from taking such action now. It is, indeed, unfortunate that DER permitted pollution of this stream to occur unabated for so many years; however, the Ingrams cannot

escape responsibility for having allowed discharges to occur by arguing that DER took too long to act, or that they have relied to their detriment on DER's past inaction. Accepting the Ingrams' position would require this Court to ignore the language of Section 701, and ignore the broader purpose which the Clean Streams Law is meant to achieve. *See Barnes & Tucker.* Under these circumstances, we find no merit in the Ingrams' initial allegation of error by EHB.

■ The Ingrams' second and final issue is an allegation that DER is attempting to retroactively apply current DER regulations to the Ingrams, which regulations are allegedly contrary to DER policy and regulations in effect from 1976–1982. The Ingrams contend that such a retroactive application of current DER regulations is unconstitutional.

■ We do not find that DER is attempting to retroactively apply its regulations to the Ingrams. The stream pollution which emanates from the Frenchville site formerly mined by the Ingrams is a continuous and ongoing occurrence. In issuing its compliance order in 1988, DER was applying current regulations to a current violation of Section 315(a) of the Clean Streams Law. DER's order was not an attempt to retroactively apply a regulation. Therefore, the Ingrams' position is untenable.[6]

In summary, we find no merit in the allegations of error raised by the Ingrams' petition for review. Accordingly, we will affirm the order of EHB insofar as its entry of summary judgment for DER and against Clark R. Ingram, George M. Ingram, Gary C. Ingram and Gregory B. In-

---

6. As part of this second issue, the Ingrams also make a claim that it was error for EHB to interpret Section 315(a) in a manner that allowed for strict liability against the Ingrams, as former operators of a mine site emitting a discharge into a stream, without proof of causation of the pollution to be abated. However, this Court has held that demonstration of a causal link is not a prerequisite for imposition of liability under Section 315(a). *Thompson & Phillips Clay Company v. Department of Environmental Resources*, 136 Pa.Commonwealth Ct. 300, 582 A.2d 1162 (1990). Thus, we find no merit to this allegation of error.

gram, and insofar as its dismissal of the Ingrams' appeal of DER's compliance order to EHB.

## II.

The second petition for review before us concerns the effect of EHB's order on the estate and personal representatives of Herman J. Israel. Initially, several procedural issues are raised which we must address.

This petition for review was filed on behalf of "the Estate of Herman J. Israel, deceased." DER requests that this Court quash the petition on grounds that an estate lacks the capacity to institute legal proceedings, thus rendering this petition for review a nullity *ab initio*. Although this question was previously presented to a single judge of this Court, the Hon. William W. Lipsitt, who denied DER's motion to quash by order dated July 5, 1990, DER argues that the question goes to our jurisdiction, and therefore may again be raised at this stage of the proceedings.

DER has cited several pertinent cases which support its position that suits by or against an estate must be brought by or against the personal representatives of the estate. *See, e.g., Wilkes–Barre General Hospital v. Lesho*, 62 Pa.Commonwealth Ct. 222, 435 A.2d 1340 (1981). Our appellate rules also provide for substitution of the personal representative of a deceased party. *See* Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 502(a). However, we do not agree with DER's position that filing of this petition for review on behalf of the estate, rather than the personal representatives, raises an issue which goes to our jurisdiction. There is no question that this Court has jurisdiction over a petition for review of a final order of EHB. And there is no dispute that the order of EHB substituted the personal representatives of Herman J. Israel, rather than the estate of Herman J. Israel, as parties in this matter. While it was improper for the petition for review to be filed on behalf of the estate, we do not view this error as being

one which deprives this Court of jurisdiction to consider the petition.

■ The practical effect of Judge Lipsitt's order was to amend the caption of this petition to reflect the names of the estate's personal representatives. DER does not, and could not reasonably, argue that it has been prejudiced as a result of Judge Lipsitt's order. Moreover, we remind DER that it is the policy of this Court that when no petition for reconsideration from an order of a single judge has been filed, as is the case here, that order will normally be considered binding. *Larocca v. Workmen's Compensation Appeal Board (The Pittsburgh Press)*, 140 Pa.Commonwealth Ct. 192, 592 A.2d 757 (1991).[7] Considering these circumstances, we will not act now to quash this petition for review.

■ The personal representatives of the Israel estate (hereinafter Israel Petitioners) present four issues in their petition. The first issue raises a question as to whether EHB has authority to effectuate the substitution of the personal representatives of a deceased party as parties in a proceeding before EHB, and if so, whether the procedure used to effectuate that substitution in this instance was proper. Second, Israel Petitioners contend that the compliance action brought by DER is not the type of action which survives a decedent against whom such action has been brought. DER contends that these two issues have been waived because they were not raised before EHB, and therefore are not preserved for appellate review. After examination of the record, we agree with DER's position that these two issues have been waived.

The record indicates that a motion to dismiss DER's action against Israel, dated September 29, 1989, was filed by counsel a few days after Israel's death. DER's objections to this motion to dismiss are dated November 6, 1989.

7. As noted in *Larocca,* at footnote 1, we have approved this practice even in a case involving a jurisdictional issue. *City of Reading v. Templin,* 88 Pa.Commonwealth Ct. 267, 269, n. 3, 489 A.2d 272, 273, n. 3 (1985).

In its objection, DER avers that letters testamentary were granted to the personal representatives of the Israel estate on or about October 6, 1989. The Ingrams filed a similar objection dated November 7, 1989, also averring that Israel Petitioners had been granted letters testamentary. Certificates of service attached to both sets of objections indicate that service was made on counsel for the estate, now representing Israel Petitioners in this matter. The record reveals no responsive pleading or motion filed by Israel Petitioners opposing the requests that they be substituted as parties in this matter, or raising before EHB these two issues which they now wish to present to this Court. Accordingly, we find that Israel Petitioners have waived these issues, *see* Pa.R.A.P 1551, and we will not address them.

Israel Petitioners' remaining two issues concern the merits of DER's compliance order. Isreal Petitioners argue that EHB erred in granting summary judgment because genuine issues of material fact remain unresolved regarding whether Israel conducted mining or mine reclamation activities at the site. Israel Petitioners also contend that Israel was not an "operator" of a mine as that term is used in the Clean Streams Law and the Surface Mining Conservation and Reclamation Act,[8] and therefore cannot be made subject to DER's compliance order. EHB found that Israel was an operator within the meaning of the Clean Streams Law, and that no material issues of fact were in dispute.

Section 315(a) of the Clean Streams Law is, by its own terms, applicable to any person who "shall operate a mine *or allow a discharge from a mine into the waters of the Commonwealth.*" 35 P.S. § 691.315(a) (emphasis added). There is no factual dispute that discharges from the Frenchville mine site entered into the waters of the Commonwealth during the time period in which Israel owned the site, from 1982–1984. Thus, regardless of whether Israel conducted any mining activities at this site, or might be considered a mine "operator" as that term is used in the

8. Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1– 1396.31.

acts cited by Israel Petitioners, there is no dispute that during the time period Israel owned the Frenchville site he allowed discharges from that site to enter waters of the Commonwealth. Periodic water samples taken during that time period indicate that such discharges occurred. In allowing such discharges to occur, Israel violated the Clean Streams Law.

As we held in *Thompson & Phillips* (cited in full at n. 6), liability under the Clean Streams Law is not founded in tort, but is based on the police power of the Commonwealth to enact legislation for the protection of the health, safety and welfare of its citizens. It is not necessary to establish a causal link between mining activities and stream pollution for liability to attach under the Clean Streams Law. Israel's liability under Section 315(a) of the Clean Streams Law attached when he allowed discharges from the mine site to enter into the Deer Creek tributary, regardless of whether he conducted any mining activities there. Accordingly, we see no error in EHB's decision to enter summary judgment for DER.

Having found no merit to Israel Petitioners' allegations of error, we will affirm the order of EHB in its substitution of the personal representatives of the Estate of Herman J. Israel, namely Henry L. Israel and Betty Ann Taylor, as parties in this matter; in its entry of summary judgment for DER and against the personal representatives of the Estate of Herman J. Israel; and in its dismissal of Herman J. Israel's appeal of DER's compliance order to EHB.

### ORDER

AND NOW, July 19, 1991, the order of the Environmental Hearing Board in the above-captioned petitions for review is hereby affirmed.